**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SHANDONG AIRLINES CO., LTD.,
a foreign corporation,

    Plaintiff,

vs.                                              Case No. 3:09-cv-308-J-32MCR

CAPT, LLC, a Florida limited liability
company, and FLIGHT TRAINING
SERVICE INTERNATIONAL, a
Georgia corporation,

    Defendants.
_____/

## **ORDER GRANTING PARTIAL FINAL DEFAULT JUDGMENT**

THIS CAUSE is before the Court on Plaintiff, Shandong Airline Co. Ltd.'s ("Shandong"), Motion for Final Default Judgment against Defendants CAPT, LLC ("CAPT") and Flight Training Services International ("FTSI"). The Court held an ex parte hearing on the motion this afternoon, the record of which is incorporated by reference. Upon consideration, the Court finds as follows:

## **FACTUAL BACKGROUND**

Shandong instituted this action against defendants CAPT and FTSI on April 3, 2009, asserting five claims against Defendants: (1) breach of contract, (2) fraudulent inducement, (3) promissory estoppel, (4) unjust enrichment, and (5) injunctive relief. [DE-1]. Based on the Clerk's Default entered against Defendants on June 4, 2009 [DE-21], the Court finds, based on the allegations of the Complaint, the following facts as being admitted:

CAPT is a Florida limited liability company fully controlled and directly managed by FTSI. [DE-1-¶-2, 3]. FTSI represented CAPT's Commercial Airline Pilot Training Program as FTSI's

"flagship civilian training program." *Id*. at ¶ 3.

On March 21, 2008, Shandong entered into a contract with CAPT for CAPT to train twenty-four (24) cadets for Shandong under the CAPT/FTSI Pilot Training Program Standard Curriculum. *Id*. at ¶ 7. Training was to take place over a period of fifty-two (52) weeks. *Id*. The object of the Contract was that, upon the completion of the training, each cadet would be issued a U.S. Federal Aviation Administration Commercial Pilot Certificate. *Id.* at ¶ 8.

Under the Contract, CAPT undertook to:

> Provide Flight Training Services to Twenty Four (24) SHANDONG AIRLINE cadets: Private Pilot certificate under FAA Part 141, FAA Part 141 Instrument Rating Course, FAA Part 141 Commercial Pilot Certificate Multi-Engine, flight training in both simulator and aircraft, and check ride at a CAPT selected facility, which meets or exceeds the minimum Federal Administration Standards. CAPT agrees to train the SHANDONG AIRLINES Cadets so that upon completion of ground training, flight training, and check rides each will be issued a U.S. FAA Commercial Pilot Certificate.

*Id.* at Ex. "A" ¶ 1.01. Besides training, CAPT was also obligated to provide, among other things: (1) housing to the cadets during the 52-week training period; and (2) an allowance of USD $70.00 per week to each cadet. *Id*. at ¶ 10.

The parties also agreed that in the event of any delay due to *non-*Force Majeure causes, CAPT would be liable for all additional living expenses of the cadets during the delay period. *Id*. at ¶ 10. In such an event, CAPT would also be responsible for transferring the cadets to another training facility, and Shandong would not be responsible for any additional costs resulting from CAPT's non-performance and subsequent transfer. *Id*. Shandong was obligated to pay USD $68,000.00 for the

training of each of its 24 cadets. *Id*. at ¶ 12. This price was guaranteed under the terms of the Contract. *Id*.

At the time Shandong executed the Contract, CAPT represented to Shandong that CAPT, backed up by FTSI, had the requisite facilities, equipment, expertise, personnel, and financial resources to complete the training it undertook to provide under the Contract. *Id*. at ¶ 13. Shandong entered into the Contract with CAPT in reliance on these representations. *Id*. In reliance on Defendants' promises, Shandong sent twenty-four trainees to CAPT's facilities in Palm Coast, Florida. *Id*. at ¶ 15. Those trainees arrived on April 23, 2008, and were admitted into the United States as M-1 vocational students. *Id.*

A standard commercial pilot training program consists of three phases: (1) the Private Pilot Phase, consisting of a minimum of 40 hours; (2) the Solo Experience Phase, requiring 100 hours; and (3) the Checkride Phase. *Id*. at ¶ 16. A total minimum of 150 flight hours are required for certification. *Id*. However, by December 13, 2008, eight months after the admission of the 24 Shandong cadets and four months towards the completion date, CAPT had not completed the initial Private Pilot Phase. *Id*.

In December, 2008, Defendants again misrepresented to Shandong that they had enough financial resources to maintain a sizable aircraft fleet and hire enough certified flight training instructors for the completion of the promised training, even though Defendants knew that their financial situation was dire and that they would not be able to perform in accordance with their representations. *Id*. at ¶ 18. Relying on Defendants' assurances, Shandong decided not to pursue its contractual remedies. *Id*. Instead, Shandong signed an Addendum with Defendants which required

3

Defendants to cure the breach. *Id*. Mr. Shawn Raker signed the Addendum on behalf of both Defendants - CAPT and FTSI, which effectively made FTSI a party to the agreement or, at least, a *guarantor* of CAPT's performance. *Id*. at ¶ 20. Upon signing the Addendum, Shandong paid 50% of the last installment of the contract price (representing 12.5% of the total price). *Id*. at ¶ 21. Consequently, as of the end of 2008, Shandong had paid CAPT a total amount of USD $1,428,000.00, representing 87.5% of the total contract price. *Id*.

Despite Shandong's timely performance of its obligations to pay Defendants and Defendants' repeated promises to cure their breach, Defendants' performance was not forthcoming. *Id*. at ¶ 22. After providing a few hours of training to a select few of the 24 cadets, on January 23, 2009 CAPT unilaterally informed Shandong that it had "chosen to cease operations for the week of January 24th – February 1st" while "working diligently to acquire additional funding for the operation." *Id*. at Ex. "C".

Attempting once more in good faith to solve the problem, Shandong sent a delegation of three persons, including its Training Division Chief and its General Counsel, to Palm Coast to negotiate with CAPT and FTSI. *Id*. at ¶ 24. On March 27, 2009, while the Shandong delegation was still at Palm Coast and negotiations were ongoing, CAPT sent a letter to Shandong repudiating its obligations to provide further training under the Contract, claiming that "the root problem with CAPT's performance lies in the fact that CAPT has agreed to contracts with Chinese airlines in which CAPT is obligated to provide a year's worth of very expensive training at prices that are less than the cost to provide the training." *Id*. at ¶ 24. Defendants gave Shandong two "options": Option 1: Agree to an increase in the training fees to $87,750 per student, plus "overfly" hours and "additional expenses;"

4

or, Option 2: If Shandong does not accept "Option 1," Defendants "will withdraw its sponsorship of all Shandong student Visas and require the immediate removal of the students from the CAPT housing." *Id*.

On April 3, 2009, Shandong instituted this action against defendants CAPT and FTSI. [DE-1]. Shandong simultaneously filed an *ex parte* verified motion for a temporary restraining order. [DE-2]. The Court granted Shandong's motion and issued a temporary restraining order on April 6, 2009. [DE-5].

Shandong served the summons, the pleadings and the motion for temporary restraining order on both Defendants. [DE-8, 9]. Neither defendant appeared in the case.

Subsequently, on April 16, 2009, the Court entered the second Order extending the original temporary restraining order by ten days. [DE-10]. Pursuant to the second Order, Plaintiff effected a second round of service on both defendants. [DE-10]. Again, neither defendant responded.

On April 28, 2009, the Court entered a Preliminary Injunction and required Plaintiff to serve process on both Defendants for a third time. [DE-15]. Both Defendants have been served. [DE-16, 18]. But again, there was no response.

Plaintiff moved for a Clerk's Entry of Default pursuant to FED. R. CIV. P. 55(1). [DE-20]. Default was entered June 4, 2009. [DE-21]. Subsequently, the Court entered an Order on June 8, 2009, declaring the Preliminary Injunction expired and ordering Plaintiff to file a motion for final default judgment by July 31, 2009. [DE-22].

## DEFENDANTS' LIABILITIES

The parties have chosen "the laws of Palm Coast, and Flagler County Florida of the United States of America" to govern their contract. [DE-1-Ex. "A"]. As well, the wrongs committed by Defendants all occurred in Florida. Thus, Florida law applies to the determination of this case. *Forzley v. AVCO Corp. Elec. Div.*, 826 F.2d 974, 979 (11th Cir. 1989) ("The law chosen in the contract itself will be applied so long as there is a reasonable relationship between the contract and the state whose law is selected . . . .")

FED. R. CIV. P. 55(b) authorizes a district court to enter final default judgment against a defaulting party. By defaulting, a defendant effectively admits the plaintiff's well-pleaded allegations of fact. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (citing *Cotton v. Mass. Mutual Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)).

Shandong asserted five claims against Defendants: (1) breach of contract, (2) fraudulent inducement, (3) promissory estoppel, (4) unjust enrichment, and (5) injunction. [DE-1]. This Court has granted Shandong's request for temporary injunctive relief [DE-5, 10, & 15], and the relief so granted has expired. [DE-22]. Consequently only Shandong's breach of contract claim, fraudulent inducement claim, and quasi-contract claims are before this Court.

Shandong has alleged sufficient facts to establish its breach of contract claim against Defendants. Specifically, Shandong alleged that it has a valid contract with Defendants [DE-1-¶ 7-12], that Defendants have seriously breached and repudiated their contractual obligations, *id* at ¶ 32, and that Shandong incurred damages due to Defendants' breach. *Id*. at 33. These facts, which have been established by Defendants' default, are sufficient to establish Defendants' liability for breach of contract. *Technical Packaging, Inc. v. Hanchett*, 992 So. 2d 309, 313 (Fla. 2d DCA 2008). Defendants' liability for breach of contract, alone, is sufficient to support entry of final default judgment as requested herein.

Likewise, Shandong also alleged that Defendants falsely represented that they had the requisite ability and resources to perform the Contract [DE-1-¶ 3, 18, 19, 35, & 36], that Defendants knew or should have known that their representations were false, *id.* at ¶ 37, that they nonetheless made the misrepresentations to Shandong in order to induce Shandong to enter a contract for the training of the 24 cadets, *id.* at ¶ 38, that Shandong justifiably relied on Defendants' representations in sending its 24 cadets to CAPT, *id.* at 39 & 40, and that Shandong has incurred damages resulting from its reliance on Defendants' misrepresentations. *Id*. at ¶ 40. These allegations are sufficient to support a fraudulent inducement claim. *Rose v. ADT Sec. Servs, Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008); *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004).

Although Shandong has also asserted promissory estoppel and unjust enrichment claims, [DE-1 ¶ 41-50], because relief on these quasi-contract claims cannot be granted once a breach of contract has been established, *Doe v. Univision Television Group, Inc.*, 717 So.2d 63, 65 (Fla. 3d DCA 1998); *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997), the Court cannot

7

enter relief based these claims. Accordingly, for purposes of granting this motion, Shandong's promissory estoppel claim and unjust enrichment claim are regarded as moot.

## **DAMAGES**

Under Florida law, a non-breaching party "shall have fair and just compensation commensurate with the loss sustained in consequence of the [breaching party's] act which gives rise to the action." *Hanna v. Martin*, 49 So.2d 585, 587 (Fla. 1951). "In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained." *Id.* The purpose of damages in a breach of contract action is "to place the injured party in the same position he or she would have been in had the breach not occurred." *Telemundo Network, Inc. v. Spanish Television Servs.*, 812 So. 2d 461, 464 (Fla. 3d DCA 2002). In entering a final default judgment, it is not necessary for the Court to hold a hearing if the damages are liquidated or ascertainable from documentary evidence or affidavits. *Directv, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343-44 (M.D. Fla. 2003).

Here, the Court finds that at least some of Shandong's alleged damages can be ascertained from a declaration and from documentary evidence. Shandong submitted the Declaration of Gongze Li, Head of Shandong's Training Department, and three contracts in support of the Declaration. This evidence, together with the documents Shandong has filed in the case, proves by a preponderance of the evidence that Shandong has incurred damages in a liquidated amount of $1,723,454.60, consisting of the following components:

1. Refund in the amount of $ 1,020,000.00, calculated by subtracting the amount Defendants are entitled to receive under the Contract for completing the first 25% of the training

8

($408,000) from the total amount Shandong has paid to Defendants ($ 1,428,000.00). Li Decl. at ¶ 6.

2. Price increase in the amount of $ 658,548.64, based on the difference between the amount Shandong is obligated to pay the substitute trainer for the uncompleted portions of the training ($1,882,548.64) and the amount Shandong would have paid Defendants had they completed those portions ($ 1,224,000). Li Decl. at ¶ 7.

3. Visa extension costs, in the amount of $27,700. This is the total amount of money Shandong had to pay an immigration attorney and U.S. immigration authorities for changing the 24 trainees' M-1 visa sponsor and extending their visas. Li Decl. at ¶ 8(a).

4. Temporary housing expenses in the amount of $17,206.00. Shandong incurred these expenses for substitute housing for its trainees when Defendants breached the Contract by failing to provide training and housing. Li Decl. at ¶ 8 (b).

Each of the above-listed damage items is liquidated either as a fixed sum, or as capable of ascertainment from fixed data by computation. Together they constitute a liquidated claim against Defendants in the amount of $ 1,723,454.60.[1]

---

[1] Shandong additional seeks damages for $ 11,132.33 as travel expenses for three Shandong executives who visited Florida for the sole purpose of negotiating with Defendants to secure their performance of the Contract and $ 2,246,400.00 representing Shandong's loss of profit. However, as stated on the record at the hearing today, the Court is unprepared to enter judgment by default as to these sums absent further evidentiary development and reserves ruling as to Shandong's entitlement as to these sums until further Order. Accordingly, no later than **July 31, 2009**, Shandong may either submit additional documentary support for these amounts or request an evidentiary hearing at which such evidence could be developed. If Shandong does not further pursue these damages by the July 31, 2009 deadline, the Court will assume Shandong's claims to such damages to be abandoned and this Order Granting Partial Final Default Judgment will be deemed to be an Order Granting Final Default Judgment.

Because liabilities and at least partial damages have been established in this case, this Court enters final partial default judgment in favor of Shandong to the extent stated above, reserving the issue of entitlement for additional damages amounts as stated in footnote one. It is hereby

**ORDERED AND ADJUDGED** that

1. Final partial default judgment is granted on Plaintiff Shandong Airlines Co., Ltd.'s breach of contract and fraudulent inducement claims; the Clerk should enter judgment that defendants CAPT, LLC and Flight Training Services International are jointly and severally liable to Plaintiff Shandong Airlines Co. Ltd. for Plaintiff's damages based on Defendants' breach of contract, in the amount of $1,723,454.60, plus post-judgment interest, for which let execution issue forthwith.

2. Plaintiff's promissory estoppels and unjust enrichment claims are dismissed as moot.

DONE AND ORDERED in Chambers in Duval County, Jacksonville, Florida this 26th day of June, 2009.

_____
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:
counsel of record